## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                          )
**JERICKA A. ROBINSON,**                  )
                                          )
              **Plaintiff,**              )
                                          )
       **v.**                             )          **Civ. No. 03-1101 (TFH)**
                                          )
**ALBERTO GONZALES,**                     )
**Attorney General of the United States,**)
                                          )
              **Defendant.**              )
———————————————————————)

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, for

Summary Judgment. Upon careful consideration of Defendant's motion, the opposition and reply

thereto, and the entire record herein, the Court will grant Defendant's motion.

## I. BACKGROUND

**A.     Factual History**[1]

On May 20, 2003, Plaintiff, an African-American female Special Agent with the Federal

Bureau of Investigation ("FBI"), filed a complaint against Defendant alleging employment

———————————————

[1] The Court notes that under Local Civil Rule 56.1, in responding to Defendant's Statement of Material Facts Not in Dispute, Plaintiff must provide "a separate *concise* statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." LCvR 56.1 (emphasis added). Rather than admitting, denying, or admitting-in-part/denying-in-part each statement set out by Defendant in corresponding numbered paragraphs and supporting each response with citations to the record, Plaintiff set forth her own statement of facts, in no corresponding order, and includes in her filing generous amounts of improper argument and speculation. The burden has thus been placed on the Court to carefully parse the record and both sets of facts in setting forth the background of this case. Pursuant to Local Civil Rule 56.1, in resolving the instant summary judgment motion, the Court "assumes that facts identified by the moving party in the statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 56.1.

discrimination on the bases of race, sex, and retaliation for protected civil rights activities.

Compl. ¶¶ 1, 3.  Plaintiff entered duty as an FBI Special Agent in December of 1985.  See Def.'s

Mot. for Summ. J., Ex. 3 at 1(Robinson Aff.).  During the time period relevant to this lawsuit,

Ms. Robinson worked out of the FBI's Washington Field Office where she was assigned to the

Fugitive Squad.  See id. at 2.  Her direct supervisor on the Fugitive Squad was Supervisory

Special Agent Emmanuel Johnson.  See id.  Plaintiff's second level supervisor was Edward

Shubert, Assistant Special Agent in Charge of the Washington Field Office Criminal Division.

Def.'s Mot., Ex. 8 (Shubert Aff., June 23, 1999).

     1.    *First Office of Equal Employment Opportunity ("EEO") Contact*

In 1997, Plaintiff initiated EEO counseling.  See Pl.'s Opp'n, Ex. N at 46-47 (Robinson

Dep.).  She sought counseling because her request for training to become an applicant assessor

was denied by Shubert, and because Shubert informed her that she was being transferred to a

detail in Newington, Virginia.  See id. at 42.  Plaintiff believed that the Newington detail was a

"punishment detail."  See id. at 43.  According to Plaintiff, after she made her initial EEO

complaint, Assistant Director in Charge Thomas Pichard ordered that Plaintiff not be sent to the

Newington detail, and further ordered that she be approved for assessor training.  See id. at 46.

Plaintiff then withdrew from the EEO process.  See id. at 47.

     2.    *Denial of Authorization to Use a Bureau Car for Travel*

On January 31, 1998, Plaintiff was assigned to participate in an assessment of applicants

for FBI Special Agent positions in New York.  See Def.'s Mot., Ex. 6 at 2 (FBI Memorandum re:

Special Agent Selection System).  Travel expenses were to be paid by the Personnel Division at

FBI Headquarters.  See id.  On February 12, 1998, Plaintiff submitted an electronic request for

authorization to drive a Bureau car to New York for the assessment.  See Def.'s Mot., Ex. 6

(Robinson Email, Aug. 17, 1997).  The request was denied.  See Compl. ¶ 144.  Consequently,

Plaintiff attended the assessment using air and public transportation.  See Def.'s Mot., Ex. 2 ¶ 25

(Pl.'s Resp. to Def.'s First Set of Requests for Admis.).

      3.     *Non-selection for Quality Step Increase Award*

     Quality Step Increase ("QSI") awards recognize those FBI employees whose sustained

high-quality performance substantially exceeds an acceptable level of competence.  See Def.'s

Mot., Ex. 7 at 1 (FBI Manual of Admin. Operations and Procedures Pt. 1: Quality Step

Increases).  In recognition of such high quality performance, QSI awards provide faster than

normal step increases.  See id.  QSI awards are limited in number and are allocated by FBI

Headquarters to each field office annually.  See id.

     In April of 1998, Plaintiff's supervisor nominated Plaintiff for a QSI award and

transmitted the nomination to his supervisor, Shubert.  See Def.'s Mot., Ex. 4 at 3 (Chase Aff.).

Shubert was ultimately responsible for recommending which agents should receive the awards to

his Division Special Agent in Charge for final approval.  See Def.'s Mot., Ex. 8A at 3 (Shubert

Aff., July 14, 1999).  While twelve individuals from Shubert's branch were nominated, only eight

QSI awards were available.  See id. at 2.  Plaintiff was ultimately not selected to receive an

award.  See id. at 1.

     Shubert's criterion for choosing the ultimate eight QSI award recipients was the extent to

which the nominees implemented undercover operations, sophisticated techniques, or other

complex investigative procedures.  See Def.'s Mot., Ex. 8 at 4-6 (Shubert Aff., June 23, 1999).

Those selected to receive the QSI awards were considered to have achieved a higher level in

relation to the complexity of their case work or programs and the significance of their accomplishments. See Def.'s Mot., Ex. 8A at 2 (Shubert Aff., July 14, 1999). Shubert noted that while Plaintiff had a large number of fugitive arrests on her record, these arrests were routine and did not employ the investigative techniques enumerated in his QSI selection criteria. See Def.'S Mot., Ex. 8 at 3 (Shubert Aff., June 23, 1999).[2] Shubert avers that he never considered Plaintiff's prior EEO activity or race in any of his decisions relating to her. See id. at 11.

Shubert's recommendations were sent to Special Agent in Charge John L. Barrett, who concurred with Shubert's findings after a review of the supporting documentation. See Def.'s Mot., Ex. 10 at 2-3 (Barrett Aff.). He found no indication of discrimination or retaliation against Plaintiff. See id. Final approval of the recommendations was made by Assistant Director in Charge J.C. Carter, who also concurred with the findings and found that they were consistent with his personal knowledge of Plaintiff's work. See Def.'s Mot., Ex. 9 at 2-3 (Carter Aff.). Carter stated that he was personally aware of the general performance and accomplishments of Plaintiff and the other nominees, and that he found Plaintiff to be less qualified for a QSI award when compared to the agents ultimately selected. See id. at 3.

4.    *Non-selection for Promotion to Supervisory Special Agent*

In June of 1998, Plaintiff applied to a notice of vacancy for a Supervisory Special Agent position in the Special Agent Applicant Unit (SAAU). See Compl. ¶ 125. On July 14, 1998, Unit Chief Patrick M. Maloy of the SAAU reviewed and evaluated each candidate's application against the qualifications for the position. See Def.'s Mot., Ex. 11 (Maloy Aff., Feb. 2, 2000). Maloy ranked the candidates based on their investigative experience, relief supervisory

---

[2] Plaintiff disputes the statement that she did not employ innovative techniques.

experience, organizational/administrative skills, oral and written communication skills, experience in personnel processing and interpersonal skills.  See id.  Maloy states that at the time he ranked the candidates he had no knowledge of any EEO complaints filed by Plaintiff.  See id. at 3.

On July 17, 1998, Maloy presented his findings to the Administrative Services Division Career Board who unanimously approved his rankings for the position.  See Def.'s Mot., Ex. 13 (Hutcherson Mem., Jan. 18, 2000).  Plaintiff was ultimately ranked fifth among the nine candidates.  See id.  The Career Board recommended the ultimate selectee, Maloy's first ranked applicant, for the position based on his superior qualifications for the position as compared to the other applicants.  See id.  On August 18, 1998, the Special Agent Mid-Level Management Selection ("SAMMS") Board considered the Career Board's findings and also unanimously selected Maloy's first ranked candidate, Marcus Williams, for the position.  See Def.'s Mot., Ex. 16 (Hutcherson Mem., Feb. 8, 2000).

**B.    Procedural History**

During Plaintiff's employment as a Special Agent, she filed two formal EEO complaints. See Compl. ¶¶ 5-6.  The first complaint, filed on June 25, 1998, claimed that Plaintiff was discriminated against on the bases of race, sex and reprisal for prior EEO activity when (1) she was not permitted to use a Bureau car to travel to a Special Agent Assessor Board meeting in February 1998; and (2) she was not selected for a QSI in April 1998.  The second complaint, filed on December 29, 1998, claimed that Plaintiff was discriminated against on the basis of sex and in reprisal for prior EEO activity when she was not selected for the supervisory special agent position in August of 1998.  The aforementioned complaints were later consolidated.

At the conclusion of the investigations of Plaintiff's EEO complaints, Plaintiff was informed of her right to request a hearing before an EEOC Administrative Judge, or to receive a final decision by the agency.  Because Plaintiff did not respond within the required time period, no hearing was held and the agency issued a final decision.  A final agency decision ("FAD") was entered in favor of Defendant.

Plaintiff timely appealed the FAD pursuant to 29 C.F.R § 1614.405.  On February 18, 2003, the FAD was affirmed.  The appellate agency decision advised Plaintiff of her right to file a civil action in an appropriate United States District Court.  Plaintiff then filed a complaint with this Court on May 20, 2005.  Plaintiff's filing with the United States District Court for the District of Columbia terminated the administrative processing of her complaint with the EEO.

Because Defendant's motion for a partial dismissal, filed on September 16, 2003, was granted by Order dated July 14, 2004, only three alleged violations remain: (1) the denial of permission for Plaintiff to use a Bureau car for a trip to New York in 1998; (2) the non-selection of Plaintiff for a Quality Step Increase in April of 1998; and (3) the non-selection of Plaintiff for promotion to Supervisory Special Agent position in April of 1998.  See Or. Granting Mot. for Partial Dismissal, Sept. 16, 2003 [# 18].

## II.  LEGAL STANDARD

### A.    Summary Judgment, Fed. R. Civ. P. 56

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This analysis considers the pleadings, discovery, and

any affidavits or other materials submitted viewed in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  The movant carries the initial burden of proving that there is no genuine issue of material fact for trial.  Celotex, 477 U.S. at 323.  If the movant carries his initial burden, then the burden shifts to the non-moving party to establish that there is indeed a genuine issue of material fact for trial.  Id. at 324.  The non-moving party may not satisfy his burden through merely colorable or not significantly probative evidence.  Anderson, 477 U.S. at 249-50.  If the non-moving party fails to establish a genuine issue of material fact and no reasonable jury could find for the non-moving party as a matter of law, the movant prevails in its motion for summary judgment.  Adickes, 398 U.S. at 161; see Celotex, 477 U.S. at 322-23.

The judge's function is not to determine the truth of the matter.  Anderson, 477 U.S. at 249.  Instead, he must determine whether there is a genuine issue for trial on an independent review of the evidence presented.  Id.; see Kaempe v. Myers, 367 F.3d 958, 966 (D.C. Cir. 2004) (citing Celotex, 477 U.S. at 322).  In its analysis, the Court is guided by the same substantive evidentiary burden that the jury must apply.  Anderson, 477 U.S. at 254.  Therefore, the Court must account for the quantum and quality of proof to determine whether genuine issues of material fact exist for trial.  Id.

**B.**     **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)** *et seq.*

Title VII prohibits, *inter alia*, racial discrimination, sexual discrimination and reprisal for participation in protected EEO activity.  42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e-3(a); see Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004).  Where, as here, there is no direct evidence of discrimination, claims under Title VII are analyzed under a burden-

7

shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  <u>Id.</u> at 802.

In order to meet this burden Plaintiff must produce enough evidence that permits a reasonable

inference that (1) she is a member of a protected class, (2) she suffered an adverse employment

action against her, and (3) the unfavorable action gives rise to an inference of discrimination.

<u>Teneyck</u>, 365 F.3d at 1149-50 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802); <u>see</u> <u>Carter v.</u>

<u>George Washington Univ.</u>, 387 F.3d 872, 878 (D.C. Cir. 2004) (also listing the elements for a

*prima facie* case of retaliation).

 If Plaintiff is able to establish a *prima facie* case, she has raised a rebuttable presumption

that the employer discriminated against her.  <u>Teneyck</u>, 365 F.3d at 1151.  The burden then shifts

to Defendant to produce evidence that would establish that his actions were motivated by a

legitimate nondiscriminatory or non-retaliatory reason.  <u>Id.</u>  If Defendant is able to do so, the

final burden then shifts back to Plaintiff to show that Defendant's proffered reasons were not the

true reasons for the allegedly discriminatory or retaliatory actions and were only a pretext for

unlawful discrimination.  <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507-08 (1993);

<u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>McDonnell Douglas</u>,

411 U.S. at 804.

 Title VII also prohibits employers from retaliating against employees for asserting their

rights.  <u>Holcomb v. Powell</u>, 433 F.3d 889, 901 (D.C. Cir. 2006).  Analysis of a Title VII

retaliation claim follows the same burden-shifting framework as with discrimination claims.  <u>Id.</u>

In order to establish a *prima facie* case of retaliation, the plaintiff must present evidence that: (1)

she engaged in activity protected by Title VII; (2) the employer took an adverse employment

action against her; and (3) the adverse action was causally related to the exercise of her rights. Id. at 901-902.

### III. ANALYSIS

Plaintiff cannot establish a viable case of discrimination or retaliation with respect to any of the challenged actions. First, Plaintiff has failed to establish a *prima facie* case on the claim of denial of authorization to use a Bureau car because she cannot show she has suffered an adverse employment action. Next, Plaintiff has failed to meet her final burden on her two non-selection claims to demonstrate that Defendant's proffered non-discriminatory reasons were false or pretextual. Therefore, Plaintiff's claims must be dismissed.

**A.      Denial of Authorization to Use Bureau Car for Travel**

Plaintiff first claims that she was denied the use of her Bureau car for an official trip to New York City as a result of discrimination on the basis of her race or in reprisal for her prior EEO activity. With regard to this claim, Plaintiff has failed to meet her initial burden of establishing a *prima facie* case of discrimination or retaliation because the denial does not constitute an adverse employment action.

A claim of discrimination or retaliation requires that Plaintiff suffer an adverse employment action. See Brown v. Brody, 199 F.3d 446, 452-56 (D.C. Cir. 1999); Lester v. Natsios, 290 F. Supp. 2d 11, 20 (D.D.C. 2003). The Supreme Court defines an adverse employment action under Title VII as one that imposes upon Plaintiff a change with respect to the terms and conditions of employment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The harm must be objectively tangible. Brown, 199 F.3d at 456; see Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (subjective harms such as dissatisfaction or humiliation

are not adverse).  Therefore, an adverse employment action must impose a "significant change in employment status." Brown, 199 F.3d at 456 (listing "hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits" as examples of tangible employment actions).   Anything less than an objective, tangible harm will not meet the required threshold of an adverse employment action. See e.g., Lester, 290 F. Supp. 2d at 29–30 (illustrating alleged employment actions which do not meet the required threshold such as increased workloads and undesirable assignments); Jones v. Billington, 12 F. Supp. 2d 1, 13 (D.D.C 1997) ("Not everything that makes an employee unhappy is an actionable adverse action.") (citations omitted).

Plaintiff cannot establish that the denial of permission for her to use her official car to travel outside the jurisdiction on a single occasion was an adverse employment action.  See Von Gunten v. Maryland Dep't of Environment, 68 F. Supp. 2d 654, 663 (D. Md. 1999) (finding employer's withdrawal of employee's official vehicle did not constitute adverse employment action actionable under Title VII, even if combined with additional events including giving employee unsatisfactory performance rating).  The denial was not a tangible harm that imposed a significant change in Plaintiff's benefits, especially where permission to use the car was not withdrawn in its entirety, and the FBI provided the expenses for Plaintiff's travel on the single incident in which she was not allowed to use the car.  Because Plaintiff has failed to set forth a *prima facie* case of discrimination or retaliation with regard to the bureau car incident, Plaintiff's first claim is dismissed.

**B.      Denial of a Quality Step Increase (QSI) Award**

      1.      *Plaintiff's* <u>Prima Facie</u> *Case: Discrimination*

Under the <u>McDonnell Douglas</u> framework, in order to meet her initial burden of establishing a *prima facie* case of discrimination, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for an available position; (3) despite her qualifications, she was rejected; and (4) either someone filled the position or it remained vacant and the employer continued to seek applicants. <u>See</u> <u>Holcomb</u>, 433 F.3d at 895. In order to satisfy her burden, she must show that neither an absolute or relative lack of qualifications nor the absence of a vacancy in the job sought prevented her promotion. <u>Id.</u> at 896.

The Court finds that Plaintiff has established a *prima facie* case of discrimination with regard to her non-selection for a Quality Step Increase award. Plaintiff is an African-American woman, she was nominated for the award by her supervisor as one of the candidates with the minimum qualifications,[3] she was not in fact selected for a QSI award, the available QSIs were awarded to other nominated agents. Neither an absolute lack of qualifications nor the absence of availability of the award sought prevented her receipt of the award. <u>See</u> <u>id.</u>

      2.      *Plaintiff's* <u>Prima Facie</u> *Case: Retaliation*

Plaintiff also claims that her non-selection for a QSI award constituted unlawful retaliation in violation of Title VII. Again, Plaintiff bears the initial burden of

---

[3] Indeed, Assistant Special Agent in charge Edward M. Shubert, who made the ultimate QSI selections, stated that Plaintiff was an "excellent" candidate for the QSI award. <u>See</u> Def.'s Mot., Ex. 8A at 2 (Shubert Aff., July 14, 1999).

establishing a *prima facie* case of retaliation.  In order to do so, Plaintiff must present evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights.  Holcomb, 433 F.3d at 901-902.

Here, Plaintiff meets the first two requirements: she engaged in activity protected by Title VII when she sought Equal Employment Opportunity ("EEO") counseling[4] in May of 1997, and her non-selection for a QSI award qualifies as an adverse employment action taken against her by Defendant.  Plaintiff may satisfy the third element of a *prima facie* case by showing "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."  Id. at 903 (quoting Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985)).  Shubert, who made the ultimate award selections, admits that he was aware that Plaintiff had sought EEO counseling.  See Def.'s Mot., Ex. 8 at 9 (Shubert Aff., June 23, 1999).  Further, Plaintiff had sought the counseling because she had received a transfer to what she considered to be an unfavorable detail from Shubert.  Finally, the adverse action was taken in April of 1998, nearly a year after Plaintiff's EEO activity.  Almost a year between the adverse action and the protected activity would not establish the "close temporal proximity" usually required to give rise to an inference of causation.  See Holcomb, 433 F.3d at 903. Generally, the temporal proximity must be "very close."  Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001); see also,  Richmond v. ONEOK, Inc., 120 F.3d 205,

---

[4] Plaintiff had sought EEO counseling because she had received an assignment that she considered a "punishment detail."  She later withdrew from counseling when she was excused from the assignment.

209 (10th Cir. 1997) (finding three month period insufficient); Hughes v. Derwinski, 967

F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient).  The eleven month

gap is too great to permit temporal proximity alone to establish causation.  Even if

Plaintiff's other evidence is sufficient to establish causation and thus her *prima facie* case

of retaliation, as discussed further below, Defendant has established a non-retaliatory

explanation for Plaintiff's non-selection, as to which Plaintiff is unable to establish

pretext.

     3.     *Legitimate, Non-Discriminatory and Non-Retaliatory Explanation*

Once Plaintiff has established a *prima facie* case, the burden shifts to Defendant to

produce evidence that Plaintiff was not selected for a legitimate, non-discriminatory and

non-retaliatory reason.  Defendant has met its burden in this case.  Shubert, who made the

selections, stated in his affidavit that he based his decision on the fact that the

performance of the selectees involved more complex investigations and significant

accomplishments than that of those not selected, including Plaintiff.  See Def.'s Mot., Ex.

8, 8A (Shubert Affs.).  While he acknowledged that Plaintiff had a commendable large

number of fugitive arrests, he found that those were mostly routine arrests rather than

more sophisticated operations.  See id.  He further stated that he never considered

Plaintiff's prior EEO activity or race in any of his decisions relating to her.  See id.

Shubert's recommendations were reviewed by his direct and next level

supervisors, who both concurred with his decisions.  See Def.'s Mot., Ex. 10 (Barrett

Aff.); id., Ex. 9 (Carter Aff.).  Shubert's merit-based justification constitutes a legitimate,

non-discriminatory and non-retaliatory reason for the allegedly discriminatory action, and

as Defendant's burden is one of production rather than persuasion, it has satisfied the second prong of the McDonnell Douglas framework.

    4.    *Plaintiff's Final Burden: Establishing Intentional Discrimination*

Once the defendant has provided a legitimate explanation for its actions, the presumption of discrimination disappears.  See Burke v. Gould, 286 F.3d 513, 520 (D.C. Cir. 2002).  "At this point, 'to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason.'"  Holcomb, 433 F.3d at 897 (quoting Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).  In doing so, Plaintiff may rely on any combination of (1) evidence establishing her prima facie case; (2) evidence attacking the proffered legitimate explanation for the action; and (3) any other available evidence of discrimination or retaliation, such as independent evidence of discriminatory statements or attitudes on the part of the employer.  See Holcomb, 433 F.3d at 897; Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc).

To meet this final burden, Plaintiff challenges Shubert's merit-based explanation for not selecting Plaintiff for one of the QSI awards, and asserts a pattern of discriminatory conduct by Schubert.  As to the challenge of Shubert's explanation regarding his selection decision, the D.C. Circuit has made clear that courts should "decline to serve as a 'super-personnel department that reexamines an entity's business decisions.'"  See Holcomb, 433 F.3d at 897 (quoting Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999); see also Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Title VII liability cannot rest solely upon a judge's determination that

an employer misjudged the relative qualifications of admittedly qualified candidates.").  A factfinder could infer discrimination, however, if the evidence revealed that a reasonable employer would have found the plaintiff *significantly* better qualified but nevertheless failed to offer the position to her.  See Aka, 156 F.3d at 1294.  The difference between the candidates' qualifications must be so great as to be inherently indicative of discrimination.  See Holcomb, 433 F.3d at 897; Lathram, 336 F.3d at 1091 (citing a "wide and inexplicable gulf" between candidates).

Under FBI regulations, in order to qualify for an award of a QSI, an employee must demonstrate a sustained high-quality performance at a level that substantially exceeds an acceptable level of competence.  See Def.'s Mot., Ex. 7 (FBI Manual of Admin. Operations and Procedures Pt. 1: Quality Step Increases).  Shubert testified that the performance of the eight agents he ultimately selected from the group of twelve involved more complex investigations and more significant accomplishments than that of those not selected.  See Def.'s Mot., Ex. 8 at 3-4 (Shubert Aff., June 23, 1999).  Plaintiff disputes this characterization of her work.

Shubert described the accomplishments of the selected agents as follows.  Special Agent Bridget Cox utilized a multi-line Title III interception as well as consensual monitoring in a complex drug matter.  Special Agent Richard Diana utilized numerous consensual monitoring and other innovative techniques in a complex drug case.  Special Agent L.C. Jennings was a pilot who maintained air coverage above and beyond normal standards in several sensitive National Security Division cases.  Special Agent J. Michael McGinty developed excellent sources, and engaged in consensual monitoring and other

innovative investigative techniques leading to the prosecution of a Dominican drug

organization, as well as the prosecution of a Metropolitan police officer in a corruption

case. Special Agent Lisa Miller was instrumental in the forfeiture and seizure of millions

of dollars in assets, and had five months of experience as an acting supervisor. Special

Agent Phillip Ponder was a Coordinator, responsible for supervising fourteen to eighteen

employees on several teams, which provided support in the investigation of several high

profile violent crime and drug cases. Special Agent Armin Showalter handled several

sensitive violent crime cases, including an attempted political assassination, a foreign

kidnaping case, and an abduction and murder case. Finally, Special Agent Daniel Sparks

was one of the highest performing agents in the FBI Washington Field Office Division,

who conducted a complex investigation of a significant violent crime organization.

See Def.'s Mot., Ex. 8 at 4-6 (Shubert Aff., June 23, 1999).

Plaintiff is unable to dispute Defendant's evidence that the selected agents had

more experience with undercover work and complex criminal investigations than did

Plaintiff. Plaintiff contends that she did use innovative techniques and that Shubert was

personally aware of them at the time he made the award selections. See Pl.'s Opp'n, Ex.

O (Johnson Mem., May 22, 1997). Plaintiff advances a memorandum written May 22,

1997, which although heavily redacted appears to circulate to FBI colleagues that an

innovative investigatory technique was employed by the Fugitive squad in which Plaintiff

worked. See id. This memorandum was also circulated to Shubert who would have then

been aware in the QSI selection process that Plaintiff had indeed employed an innovative

investigatory technique. See id.

16

Accepting Plaintiff's evidence as true, as the Court must at this stage, it still cannot be said that this evidence establishes that Plaintiff was *significantly* more qualified for the QSI award than any of the selected candidates.  While Plaintiff may have employed one innovative investigatory technique one year prior to the QSI selections, given the accomplishments enumerated for the selectees, Plaintiff appears at best, comparably qualified for a QSI.  "In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call."  Aka, 156 F.3d at 1294.

On the other hand, adequate evidence that an employer's explanation was fabricated after the fact, or that the explanation misstates the candidates' qualifications may be sufficient to allow a jury to infer discrimination.  See id. at 1295.  Here, Plaintiff characterizes Schubert's statement that Plaintiff's work involved routine fugitive arrests, rather than innovative or complex investigative techniques as "an unequivocal lie."  Pl.'s Opp'n at 14.  To support this accusation, Plaintiff relies on the memo regarding her task force's use of an innovative investigative technique that was circulated to Shubert in May of 1997.  Plaintiff argues that the memo is proof that Shubert was in fact aware that Plaintiff had been using an innovative technique, and thus that his statement that her work involved only routine arrests was fabricated.  Plaintiff's evidence is not sufficient to allow a jury to infer that Shubert lied in his explanation of Plaintiff's qualifications.  Shubert's statement was a generalization of Plaintiff's work experience.  His emphasis on the value of innovative and complex investigations was in relation to building large criminal cases

for prosecution, compared to the apprehension of fugitives.  The memo Plaintiff offers is inadequate to allow a jury to infer that Shubert's explanation was fabricated after the fact.

Finally, Plaintiff is not limited to challenging the proffered explanation for her non-selection.  She may alternatively avoid summary judgment by presenting other direct or circumstantial evidence that permits an inference of discrimination or retaliation by the FBI.  See Aka, 156 F.3d at 1295 n.11.  Plaintiff advances an EEO complaint of Plaintiff's supervisor, Supervisory Special Agent Emmanuel Johnson, alleging discrimination by Shubert.  See Pl.'s Opp'n, Ex. S at 2-4 (Johnson EEO Compl., Sept. 19, 1997).  The allegations in that document are, as Defendant states, virtually incomprehensible.  The complaint, does however, clearly allege that "Shubert's discriminatory actions are reflective of the furtiveness that he has consistently exhibited towards Black [Special Agents]."  See id. at 2.  The complaint goes on to state that Shubert exhibits a "Segregationalist's mentality of having to protect White women from the sexual aggression of Black men."  See id.  The complaint states that Shubert also discriminated against two other African-American supervisors, alleging that Shubert was overheard stating his intentions to drive one of those supervisors out, and threatening to "get" the other during performance evaluations.  See id. at 5-6.  The allegations in Johnson's EEO complaint are not supported with any other evidence.  Plaintiff also alleges that Shubert has a history of discriminating against Korean-Americans.  See Pl's Opp'n at 15.  Plaintiff, however, fails to provide any evidence to substantiate those claims.  Plaintiff submits no further evidence that her non-selection was in retaliation for her EEO activity.

The bare allegations in Johnson's EEO complaint, combined with Plaintiff's

*prima facie* case, are insufficient to allow a reasonable jury to infer that Shubert discriminated or retaliated against Plaintiff when he did not select her for a Quality Step Increase award.  Therefore, this claim cannot survive summary judgment.

**C.     Non-selection for Supervisory Special Agent Position**

Plaintiff's third claim under Title VII involves her non-selection for the Supervisory Special Agent position at FBI Headquarters.  Plaintiff claims that her non-selection for the position resulted from discrimination based on sex or in reprisal for protected EEO activity.  The shifting burdens analysis must be employed once more to reveal whether Plaintiff advances a viable claim of discrimination or retaliation.

1.     *Plaintiff's* <u>Prima Facie</u> *Case: Discrimination*

Once again, under the <u>McDonnell Douglas</u> framework, in order to meet her initial burden of establishing a *prima facie* case of discrimination, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for an available position; (3) despite her qualifications, she was rejected; and (4) either someone filled the position or it remained vacant and the employer continued to seek applicants. <u>See</u> <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006).  In order to satisfy her burden, she must show that neither an absolute or relative lack of qualifications nor the absence of a vacancy in the job sought prevented her promotion.  <u>Id.</u> at 896.

The Court finds that Plaintiff has met her burden of establishing a *prima facie* case: she is a member of a protected class (female), she applied for and had the minimum qualifications for the available position of Supervisory Special Agent, and she was not selected in favor of another candidate who was awarded the position.

2.    *Plaintiff's* <u>Prima Facie</u> *Case: Retaliation*

Plaintiff also claims that her non-selection for the Supervisory Special Agent position constituted unlawful retaliation in violation of Title VII.  Again, Plaintiff bears the initial burden of establishing a *prima facie* case of retaliation with regard to her non-selection.  In order to do so, Plaintiff must present evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights. <u>Holcomb</u>, 433 F.3d at 901-902.

Plaintiff meets the first two requirements: she engaged in protected activity when she filed an EEO complaint on June 25, 1998, and her employer took an adverse employment action against her in denying the promotion.  As to the third element of the *prima facie* case, causation, the temporal proximity between the two events is "very close." <u>Clark County School Dist.</u>, 532 U.S. at 273.  Unit Chief Maloy, who ranked Plaintiff fifth among the nine candidates for the promotion, presented those rankings to the Administrative Services Career Board on July 17, 1998, less than one month after Plaintiff made her complaint.  <u>See</u> Def.'s Mot., Ex. 13 (Hutcherson Mem., Jan. 18, 2000). "At the *prima facie* stage of a retaliation claim, a plaintiff's burden 'is not great; [she] merely needs to establish facts adequate to permit an inference of retaliatory motive.'" <u>Holcomb</u>, 433 F.3d at 903 (quoting <u>McKenna v. Weinberger</u>, 729 F.2d 783, 790 (D.C. Cir. 1984).  Plaintiff has met this minimal burden here.

3.    *Legitimate, Non-Discriminatory and Non-retaliatory Explanation*

The burden next shifts to Defendant to provide a legitimate, non-discriminatory,

and non-retaliatory explanation for the decision.  Defendant meets that burden again here.

Unit Chief Patrick M. Maloy, who made the selection, has provided a qualifications-based

framework for his decision.  See Def.'s Mot., Ex. 8, 8A (Maloy Affs.).  Maloy testified

that he evaluated the nine candidates' backgrounds, and compared those to the

qualifications required for the position.  See id.  The qualifications he considered:

investigative experience, relief supervisory experience, organizational/administrative

skills, experience in personnel processing, and interpersonal skills, were all legitimate,

non-discriminatory and non-retaliatory bases for selection.  Maloy ranked the candidates

and proposed Marcus Williams for the position.  See id.  Maloy stated that he ultimately

selected Williams over Plaintiff based on Williams' superior detail orientation, his work

ethic, Maloy's personal observations of Williams' work, and the fact that Maloy had no

negative information concerning Williams.  See Def.'s Mot., Ex. 11A at 2 (Maloy Aff.,

Aug. 22, 2000).

　　　　In comparison, Maloy did have some negative information regarding Plaintiff,

including that she had made an inappropriate comment regarding race, and that she had

inappropriate contact with FBI applicants.  See Def.'s Ex. 11 at 3 (Maloy Aff., Feb. 10,

2000).  Plaintiff was ultimately ranked fifth out of the nine candidates.  See Def.'s Mot.,

Ex. 13 (Hutcherson Mem., Jan. 18, 2000).  Further, Maloy stated that sex was not a

consideration in his decision.  See Def.'s Mot., Ex. 11 (Maloy Aff., Feb. 10, 2000).

Maloy presented his selection to the Administrative Services Division Career Board,

which unanimously agreed with his ranking of the candidates.  See Def.'s Mot., Ex. 13

(Hutcherson Mem., Jan. 18, 2000).  During Maloy's presentation, at no time did he

discuss the sex or EEO activity of any candidate, and the Career Board had no comments or questions regarding the sex or EEO activity of any candidate.  See id.; Def.'s Ex. 11 at 3 (Maloy Aff., Feb. 10, 2000).  Finally, the Special Agent Mid-Level Management Selection Board unanimously approved the selection of Williams for the position. See Def.'s Mot., Ex. 16 (Hutcherson Mem., Feb. 8, 2000).  Defendant has established a legitimate explanation for Plaintiff's non-selection: the ultimate selectee was better suited to the position.

     4.    *Plaintiff's Final Burden: Establishing Intentional Discrimination*

Plaintiff must now negate Defendant's legitimate reason or establish that it was a pretext for discrimination or retaliation.  Plaintiff has failed to present any evidence that she was discriminated against because she is a woman, or that the FBI retaliated against her for her EEO activity.  The only evidence Plaintiff submits to support her allegations is her own deposition testimony.  In her testimony, she stated that she heard that a person named O'Leary, a person whom Plaintiff admits she had never met, changed Maloy's ranking order.  See Pl.'s Opp'n, Ex. N at 88-90 (Robinson Dep.).  She stated that she believes she had originally been ranked in the top three candidates by Maloy, but was moved out of the top three by O'Leary.  See id.  Plaintiff believes this sealed her fate because only the top three candidates were presented to the Career Board.  See id. Plaintiff provides no other evidence to support these allegations.  Defendant has presented evidence to show that while Plaintiff was not in the top three ranked candidates, she was still considered as a candidate for the promotion to the selecting board members, and finally that the selecting board members unanimously chose Williams for the position.

Plaintiff admits that even though she wasn't presented to the Career Board as a top three candidate, she was discussed by the Board during its deliberations.  See id. at 92.  Finally, the undisputed evidence reveals that no one named O'Leary was a member either of the Career Board, to which Maloy made his initial presentation, or the SAAMS Board, which made the final decision.  See Def.'s Mot., Ex. 13 (Hutcherson Mem., Jan. 18, 2000); id., Ex. 16 (Hutcherson Mem., Feb. 8, 2000).  That Plaintiff "heard" from sources she cannot identify that the rankings may have been tinkered with prior to their presentation to the Career Board is insufficient to raise a genuine dispute on this issue.

Plaintiff next disputes the explanation the SAAMS Board gave her in her debriefing on her non-selection for the position.  Plaintiff stated in her deposition that she was told that she was not selected because Williams, the ultimate selectee, had been an assessor longer than Plaintiff, and also served as an applicant coordinator.  See Pl.'s Opp'n, Ex. N at 86 (Robinson Dep.).  Plaintiff claims that being an assessor was not a criterion in the posting for the promotion, and that she had an extensive amount of experience as an applicant coordinator.  See id.  Maloy's evaluation of the candidates for the Supervisory Special Agent position as evidenced by his July 14, 1998 memorandum to the Career Board demonstrates that while there is mention that the ultimate selectee served as an assessor for longer than Plaintiff it does so only in summary of his career with the FBI.  See Def.'s Mot., Ex. 12 (Maloy Mem., July 14, 1998).  This Court must abide by the presumption that "the employer is most capable of assessing the significance of small differences in the qualifications of candidates," rather than inferring discrimination.  Aka, 156 F.3d at 1294.

Plaintiff also asserts that it was a lie that she ever made insensitive remarks about which Maloy counseled her.  Even without consideration of Maloy's negative experiences with Plaintiff, the undisputed evidence reveals that again, Plaintiff was at best comparably qualified for the position.  In such a close case, a reasonable jury could not infer discrimination.  See id.

Finally, Plaintiff admitted in her own deposition that she does not believe that any of the members of the SAMMS Board, which made the final decision on the selection, discriminated against her on the basis of her sex or prior EEO activity in regards to the promotion.  See Pl.'s Opp'n, Ex. N at 92-95 (Robinson Dep.).  Further, Plaintiff has presented nothing to dispute Defendant's weighty evidence that neither sex nor EEO activity was discussed during any of the two board deliberations on making the selection for the Supervisory Special Agent position.

The Court finds that Plaintiff again has failed to negate Defendant's legitimate nondiscriminatory reason for her non-selection or to proffer a pretext of unlawful discrimination or retaliation.  Because Plaintiff is unable to raise a genuine issue of material fact concerning her promotion claim, this final claim too must be dismissed.

## IV.  CONCLUSION

For the aforementioned reasons, the Court will grant Defendant's motion for summary judgment.  An appropriate Order will accompany this Memorandum Opinion.

March 31, 2006

_____
/s/
Thomas F. Hogan
Chief Judge

24